UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

PORFIRIO HERNANDEZ,

                Petitioner,             09 Civ. 6496

    -against-                    OPINION

UNITED STATES OF AMERICA,

                Respondent.

------------------------------------X

A P P E A R A N C E S:

        Pro Se

        PORFIRIO HERNANDEZ
        54209-054
        NEOCC
        2240 Hubbard Rd.
        Youngstown, OH 44505

        Attorneys for Respondent

        PREET BHARARA
        U.S. Attorney's Office, SDNY
        86 Chambers Street
        New York, NY  10007
        By:  David I. Miller, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/19/10

**Sweet, D.J.**

Petitioner Porfirio Hernandez ("Hernandez" or the "Petitioner") has moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("Pet. Br."). For the reasons set forth below, the motion is denied.

## Prior Proceedings

Hernandez pled guilty to conspiracy to defraud the United States and bail jumping and received 60 months' imprisonment on a 18 U.S.C. § 371 conspiracy charge, and 12-months-and-one-day imprisonment on a 18 U.S.C. § 3146 bail-jumping charge, for a total sentence of 72 months and one day. Hernandez's counsel, Mark Cohen, Esq. ("Cohen") had secured an agreement whereby in exchange for Hernandez's guilty plea to conspiracy and bail jumping, the Government dismissed an 18 U.S.C. § 1344 bank-fraud charge (the "Plea Agreement"), for which he could have received a substantially higher jail sentence. After sentencing, Hernandez appealed to the Second Circuit, which subsequently dismissed his appeal.

1

The instant § 2255 petition contends that his counsel was ineffective on no less than five grounds:

- Counsel failed to object to the plea's alleged inadequate factual basis where Hernandez never identified his co-conspirator or allocuted to elements of the underlying food stamp fraud offenses;

- Counsel failed to object to the Court's description of the conspiracy offense to which Hernandez allocuted;

- Neither the Court nor counsel informed Hernandez that he had the right to submit certain alleged elements of the underlying food stamp fraud offenses to a jury under Apprendi v. New Jersey, 530 U.S. 466 (2000);

- Counsel "coached [Hernandez] to sign a plea agreement that was not profitable to him" and that contained a waiver provision; and

- Counsel and the Court treated the Guidelines as if they were mandatory, in violation of United States v. Booker, 543 U.S. 220 (2005).

The petition, the Government's opposition and Hernandez's reply were marked fully submitted on September 2, 2009.

2

**The Facts**[1]

In or about 1990, Hernandez purchased a grocery store located at 3371 Broadway and renamed it the "Hernandez Grocery Store." He operated that store until August 5, 1993, when he transferred ownership to his co-defendant, Maria Del Carmen Paulino. Hernandez continued to work at the store. Thereafter, Paulino applied for and received a food stamp license to accept food stamps from the Food and Nutrition Service of the United States Department of Agriculture ("FNS"). Between April 1994 and October 1997, Hernandez and Paulino deposited or caused to be deposited large amounts of food stamps into the store's designated bank account in amounts greatly exceeding the store's food sales, as reported to New York State tax authorities, and they falsely certified on accompanying redemption certificates that the food stamps had been "accepted in accordance with Food Stamp Regulations." Through their scheme, Hernandez and Paulino fraudulently redeemed more than a million dollar's worth of food stamps.

---

[1]    The facts described in this section are derived from the Presentence Investigation Report ("PSR") and the indictments filed in the underlying case.

On September 27, 2002, Hernandez and Paulino were indicted for conspiring to commit food stamp fraud and bank fraud, in violation of Title 18, United States Code, Section 371, and for bank fraud, in violation of Title 18, United States Code, Sections 1344 and 2, in Indictment 02 Cr. 1270 (the "Food Stamp Fraud Indictment"). On October 1, 2002, they were arrested, and a trial date of June 10, 2003, was later set.

On the eve of trial, Hernandez fled the jurisdiction for the Dominican Republic. On or about June 30, 2003, Hernandez was indicted for bail jumping, in violation of 18 U.S.C. § 3146(a)(1) and (b)(1)(A)(k), in Indictment 03 Cr. 805 (the "Bail Jumping Indictment"). Hernandez was arrested in the Dominican Republic and subsequently extradited to the United States on January 13, 2006.

Under the Plea Agreement, dated August 7, 2006, Hernandez agreed to plead guilty to Count One of the Food Stamp Fraud Indictment and to Count One of the Bail Jumping Indictment. The Government agreed to drop Count Two of the Food Stamp Fraud Indictment, bank fraud (in violation of 18 U.S.C. § 1344), which has a statutory maximum of 30 years'

4

imprisonment. Cohen argued for the dismissal of the bank fraud count. In the Plea Agreement, the parties stipulated to the sentencing guidelines calculation under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"). Under the 1995 Guidelines Manual, Hernandez's offense level on Count One of the Food Stamp Fraud Indictment was 28. (See Plea Agreement at 203.) Hernandez's offense level on Count One of the Bail Jumping Indictment was 13. (See id. at 3.) The parties stipulated that Hernandez had no criminal history, placing him in Criminal History Category I. (See id. at 4.)

Based upon these calculations, the parties agreed that Hernandez's sentencing Guidelines range on Count One of the Food Stamp Fraud Indictment was 78 to 97 months' imprisonment. (See id.) Because 18 U.S.C. § 371's statutory maximum was 60 months' imprisonment, however, pursuant to U.S.S.G. § 5G1.1(a), Defendant's applicable Guidelines sentence was 60 months' imprisonment. (See id.) The parties further agreed that the Guidelines range on Count One of the Bail Jumping Indictment was 12 to 18 months' imprisonment, leading to a total stipulated range of 72 to 78 months' imprisonment. (See id.) The parties stipulated that "neither party will seek . . . a departure

5

or seek any adjustment not set forth" in the Plea Agreement from the Guidelines sentence on Count One of the Food Stamp Fraud Indictment, and that the Guidelines range on Count One of the Bail Jumping Indictment "would constitute a reasonable sentence in light of all the" § 3553(a) factors. (Id.) But the parties reserved the right to seek a sentence outside the guidelines range for Count One of the Bail Jumping Indictment. (See id. at 4-5.)

The Plea Agreement advised Hernandez that the sentence imposed is "determined solely by the Court," and that the "sentencing Guidelines are not binding on the Court." (Id.) Hernandez acknowledged that he would have no right to withdraw his plea if the imposed sentence was outside the stipulated Guidelines range. (See id.) Finally, Hernandez agreed to waive his right to appeal or file the instant § 2255 petition. (See id. at 6.)

On September 26, 2006, Hernandez appeared before Magistrate Judge Henry B. Pitman and pled guilty. At the beginning of the Rule 11 hearing — which was translated by an interpreter into Spanish — Judge Pitman confirmed that Hernandez wished to waive his right to plead guilty before a District Court judge and to proceed instead before a

6

Magistrate Judge. (See Plea Hearing Transcript ("Plea Tr.") at 3-4.) The Court referred Hernandez to the Plea Agreement. Hernandez represented to the Court that it had been translated into Spanish before he signed it, that he had reviewed it with his attorney before signing, and that he was pleading guilty to the subject offenses pursuant to the Agreement. (See id. at 4.) The Court also confirmed that Hernandez had reviewed the Indictments with counsel. (See id. at 7.) The Court asked whether Hernandez was "generally satisfied with [his] attorney's representation of [him] in this case and with the advice he has given," to which Hernandez replied that he was. (Id.)

After Hernandez indicated to the Court that he desired to plead guilty, the Court proceeded to explain the offenses charged, the elements the Government would have to prove at trial, and the maximum penalties associated with the charges. (See id. at 8-10.) The Court then confirmed that Hernandez had discussed with counsel how the advisory Guidelines might apply to his case, that it may be different from the range agreed to by the parties (which the Court recited), and that the Court has the authority to depart from the Guidelines. (See id. at 11-13.) Following this discussion, the Court proceeded to advise Hernandez

7

that he was "giving up any right [he] might otherwise have
to challenge [his] sentence," so long as the sentence was
not greater than the range discussed, and that the Plea
Agreement's sentencing range was not binding on the court.
(Id. at 13.) To this end, the Court advised Hernandez that
if the sentence imposed exceeded 78 months' imprisonment,
Hernandez would not be permitted to withdraw his guilty
plea. (See id.)

The Court then explained to Hernandez the rights
that he would be giving up by pleading guilty, and
Hernandez acknowledged that he was giving up all of those
rights. (See id. at 14-15.) Hernandez also confirmed that
other than the Plea Agreement, no other promises were made
to induce him to plead guilty. (See id. at 16.)

After Hernandez agreed that he wanted to plead
guilty because he was guilty, the Court asked him to
allocute to the offense. (See id.) Hernandez responded:

THE DEFENDANT:        From 19 — from 1993 until 1997, I
                      agreed with other people to commit
                      fraud against the United States with
                      regard to food stamps, by creating
                      illegal accounts with knowledge
                      beforehand of that.

8

THE COURT:        Was that the conclusion of the
                  defendant's statements with respect to
                  the conspiracy count?

MR. COHEN:        Just one more moment, your Honor.

THE DEFENDANT:    And, also, misappropriating bank
                  accounts.

THE COURT:        And where were you when you engaged in
                  the conduct, what county?

THE DEFENDANT:    In Manhattan.

THE INTERPRETER:  The interpreter would like to correct
                  himself, "Misappropriating," the
                  interpreter meant to say "mismanaging"
                  bank accounts.

THE COURT:        And regardless of what Mr. Hernandez is
                  personally aware, is the defense
                  conceding that the banks involved were
                  federally insured banks?

THE DEFENDANT:    Yes.


(Id. at 16-17.)  Hernandez also allocuted to the following

overt act:


THE DEFENDANT:    On October 6, 1997, I, Porfirio
                  Hernandez, submitted a certificate to
                  Banco Popular, in New York, in the
                  amount of $5,300 —

THE COURT:        And did that certificate result in the
                  bank's paying you $5,300?

THE DEFENDANT:    Yes, sir.

THE COURT:        And were you — was there something
                  fraudulent about this certificate, or
                  false about this certificate?

9

THE DEFENDANT:     No, sir.

[. . .]

THE DEFENDANT:     The certificate was not false, but the
                   information that I gave was false.

THE COURT:         And you were not, in fact, entitled to
                   $5,300 that is the case?

THE DEFENDANT:     No, sir.

(Id. at 17-18.)  The Government then proffered that the

bank at issue, Banco Popular, was FDIC insured and that the

certificate Hernandez caused to be submitted was a

redemption certificate used with the food stamp program.

(See id. at 18.)

        Hernandez then allocuted to the Bail Jumping

Indictment.  (See id. at 18-19.)  The Court found that

Hernandez entered an informed, knowing, and voluntary plea,

supported by a factual basis as to each essential element

of the offense, and accepted the plea.  (See id. at 20.)

        Prior to sentencing, the United States Probation

Office (the "Probation Office") determined in its

presentence investigation report ("PSR") that the

applicable Guidelines range for the conspiracy charge was

10

78 to 97 months' imprisonment.  (See PSR ¶ 96.)  It further found, however, that because of the statutory maximum term of imprisonment, the Guidelines range was 60 months' imprisonment.  (See id.)  As to the bail jumping charge, the Probation Office found that the applicable Guidelines range was 12 to 18 months' imprisonment.  (See PSR ¶ 97.)

On April 27, 2007, the Court issued a sentencing opinion proposing to sentence Hernandez to consecutive terms of 60 months' imprisonment on Count One of the Food Stamp Fraud Indictment and 12 months' imprisonment on Count One of the Bail Jumping Indictment.  (See Sentencing Opinion ("Sentencing Op.").)  On May 24, 2007, at the sentencing hearing, the Court confirmed that Hernandez's counsel had received and had an opportunity to review the PSR, the proposed sentencing opinion and the proposed sentence and had discussed them with Hernandez.  (See Sentencing Hearing Transcript ("Sentencing Tr.") at 2.)  Both Hernandez and his counsel addressed the Court. Hernandez's counsel asked to modify the proposed sentence in certain respects, including sentencing Hernandez to 12 months and a day's imprisonment on Count One of the Bail Jumping Indictment, so that Hernandez would be eligible for good-time credit.  (See id. at 3-6.)

11

The Court acceded to the requests and in all
other respects imposed a sentence consistent with the
sentencing opinion and sentenced Hernandez to two three-
year terms of supervised release, to be served
concurrently.  (See Sentencing Op. at 1.)  The Court also
ordered Hernandez to pay restitution amounting to $1.5
million, although the order was stayed until Hernandez is
released from prison.  (See Sentencing Op. at 1; Sentencing
Tr. at 7.)  In sentencing Hernandez, the Court considered
the factors identified in 18 U.S.C. § 3553(a), "in order to
impose a sentence 'sufficient but not greater than
necessary,'" and determined that "a Guidelines sentence
[was] warranted."  (Sentencing Op. at 10.)  The Court also
advised Hernandez that he had a right to appeal the
sentence.  (See Sentencing Tr. at 8.)  Hernandez is
currently serving his sentence.

On June 12, 2007, Hernandez filed notice of
appeal from both judgments.  On January 30, 2008,
Hernandez's newly-appointed attorney, Robert J. Boyle, Esq.
("Boyle"), filed an appellate brief and contended that the
waiver of appellate rights was invalid because:  (i)
Magistrate Judge Pitman only warned Hernandez that he was

giving up the right to "challenge" his sentence, not the
right to "appeal" it, so Hernandez believed he could still
appeal; and (ii) Hernandez's sentence was both procedurally
and substantively unreasonable.  The Government moved to
dismiss the appeal, arguing that Hernandez waived his right
to appeal.  On July 18, 2008, the Second Circuit granted
the Government's motion and dismissed Hernandez's appeal.

On July 3, 2009, Hernandez submitted his § 2255
petition through the prison mailing system, and it was
filed on July 22, 2009.

**The Applicable Law**

In a motion for collateral review of a
conviction, a court must asses whether the alleged errors
are "sufficiently fundamental" to require the conviction's
reversal.  United States v. Addonizio, 442 U.S. 178, 184-85
(1979).  In applying this standard, courts have held that
generally only constitutional or jurisdictional claims can
be raised in section 2255 motions; non-constitutional and
non-jurisdictional errors are only cognizable in those rare
instances in which the alleged errors involve a
"'fundamental defect which inherently results in a complete

13

miscarriage of justice.'" Addonizio, 442 U.S. at 185 (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

As a threshold matter, however, Hernandez has waived his right to attack his sentence in the Plea Agreement. A defendant's knowing and voluntary waiver of his right to appeal and challenge his sentence under 28 U.S.C. § 2255 is enforceable. See United States v. Morgan, 406 F.3d 135, 137 (2d Cir. 2005); Mendivelso v. United States, 507 F. Supp.2d 331, 336 (S.D.N.Y. 2007). In this case, the Plea Agreement has a clear and explicit waiver provision prohibiting Hernandez from appealing or collaterally attacking his sentence if the sentence is within or below the stipulated 72-78 month Guidelines range. (See Plea Agreement at 6.) As set forth herein, Hernandez reviewed the Plea Agreement and Indictments, and was questioned by Magistrate Judge Pitman to ensure that his plea and waiver were knowing and voluntary. Hernandez thus waived any right to attack his sentence on grounds other than ineffective assistance of counsel. See Oliver v. United States, No. 07 Civ. 5921, 2008 WL 190487, at *3 (S.D.N.Y. Jan. 22, 2008) (Cote, J.); Mendivelso, 507 F. Supp.2d at 336-37. Accordingly, Hernandez's non-ineffective assistance claims addressing the reasonableness

14

or lawfulness of his sentence — and as compared to his co-conspirator's sentence — have been waived.

## The Assistance of Counsel Was Not Ineffective

Most of Hernandez's petition contends that his guilty plea to the conspiracy charge in the Food Stamp Fraud Indictment was not knowing and voluntary because of his counsel's ineffective assistance.  In order to present a successful ineffective assistance of counsel claim, a petitioner must show that (i) his counsel's representation fell below an objective standard of reasonableness, and (ii) his counsel's performance prejudiced his defense.  See Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Hill v. Lockhart, 474 U.S. 52, 57-58 (1985) (applying Strickland test to guilty-plea challenges).  If a petitioner fails to show either prong of the inquiry, the court need not address the remaining prong.  See Strickland, 466 U.S. at 697.  The text of the Plea Agreement, the transcripts of both the plea and sentencing hearings, and the governing law demonstrate that Hernandez's plea was knowing and voluntary, and that he received effective legal assistance.

Under the first prong, Hernandez must demonstrate that Cohen's performance was objectively deficient, i.e., "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. To demonstrate this deficiency, Hernandez must show that Cohen failed to provide "reasonably effective assistance." Id. This inquiry, however, requires consideration of "all the circumstances" regarding Cohen's representation. Id. at 688. When attempting to evaluate the reasonableness of counsel's conduct, a court should be careful to avoid the "distorting effects of hindsight," and must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 689-90. Because of the difficulties in performing this inquiry, a "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

Hernandez contends that he was denied effective assistance because Cohen never objected to several errors purportedly committed at Hernandez's plea allocation: (i) Hernandez never identified his co-conspirator or allocuted to elements of the underlying food stamp fraud offenses;

16

(ii) the Court's explanation of the conspiracy offense at allocution was defective; and (iii) neither the Court nor Cohen informed Hernandez that he had the right to submit the "threshold values" under 7 U.S.C. §§ 2024(b) and (c) and 18 U.S.C. § 641 to a jury under Apprendi v. New Jersey, 530 U.S. 466 (2000).[2]  (Pet. Br. at 18-26.)  Additionally, Hernandez contends that his counsel erroneously convinced him to sign an appeal/collateral-attack waiver for a plea that was not "profitable" for him and to stipulate to a Guidelines sentence that the court "erroneously imposed . . . as if it was required by law."  (Id. at 28-31.)

Hernandez claims that his conspiracy allocution lacked a sufficient factual basis because (i) he did not identify his co-conspirator during the allocution, and (ii)

---

[2]    Hernandez also argues that he could not allocute to a conspiracy crime where Paulino never admitted that she committed a crime with Hernandez.  (See Pet. Br. at 19.)  Hernandez contends that Paulino admitted to a purportedly different conspiracy that was charged as a misdemeanor.  However, Hernandez concedes, Paulino pled guilty to a Superseding Information charging her with conspiracy to defraud the United States of goods of a value that did not exceed $1,000, in violation of 18 U.S.C. § 371.  As demonstrated in Pet. Br. Ex. B at 8-10, 15-16, Paulino pled guilty to conspiring with Hernandez to engage in conduct described in the Food Stamp Fraud Indictment.  The difference between Hernandez's conspiracy charge and Paulino's conspiracy charge is that Paulino's offense was charged as a misdemeanor.  Paulino's role and culpability in the agreed-upon conspiracy was different than Hernandez's, and the Government agreed to a guilty plea in which Paulino pled guilty to a misdemeanor count.  See Defex v. United States, No. 97 Civ. 1891, 1998 WL 812572, at *3 (E.D.N.Y. May 19, 1998) ("A difference in sentence among co-defendants, without more, does not warrant relief under § 2255.  There is no requirement that co-defendants receive similar punishment, as punishment under the guidelines is a function of several factors.").

17

he did not allocate to the elements of the underlying food stamp fraud offenses, and that counsel was therefore ineffective for failing to object. (See Pet. Br. at 16.)

During the plea hearing, the Court explained to Hernandez that he was charged with "conspiring or agreeing with others to commit food stamp fraud and bank fraud," and that the Government would have to prove at trial that "the illegal agreement described in the indictment existed . . . that [Hernandez] knowingly entered into and became part of that conspiracy with knowledge of its illegal object . . . [and] that at least one of the overt acts alleged in the indictment occurred to further some object of the conspiracy." (Plea Tr. at 8-9.) After the Court described the nature and elements of the offense, Hernandez told the Court that he was guilty because from 1993-1997 he had "agreed with other people to commit fraud against the United States with regard to food stamps, by creating illegal accounts with knowledge beforehand of that," and he had "mismanage[ed] bank accounts." (Id. at 16-17.) Hernandez also admitted that on October 6, 1997, he submitted a certificate to Banco Popular containing false

18

information, and that as a result, he was paid $5,300 to
which he was not entitled.[3] (See id. at 17-18.)

Hernandez contends that these statements are
insufficient to establish a conspiracy because he never
identified the specific individual with whom he conspired.
As Hernandez has admitted (see Pet. Br. at 19), a defendant
is not required to identify and know the names of all co-
conspirators in order to be found guilty of being a member
of the conspiracy. See United States v. Harris, 8 F.3d
943, 946 (2d Cir. 1993) ("[I]t is well settled law that an
individual need not know the identities of all
coconspirators in order to be found guilty of being a
member of the conspiracy."). Moreover, the Second Circuit
previously rejected an allocution challenge such as
Hernandez's. Luson v. United States, No. 96-3707, 159 F.3d
1347, 1998 WL 385772, at *3 (2d Cir. 1998). In Luson, the
defendant argued that his plea lacked a sufficient factual
basis because he did not specify the "other person" that he
conspired with to distribute heroin. The Court rejected
the defendant's argument: "the absence of the actual
identify of the coconspirator does not render insufficient

---

[3]    Further, Hernandez admitted that although he knew his trial was
scheduled for June 10, 2003, and that he was required to appear in
court on that date, he failed to appear, and his non-appearance was
knowing and voluntary. (See Plea Tr. at 18-19.)

19

the proof of a conspiracy . . . or render inadequate the factual basis of a plea." Id.

As in Luson, there is no requirement that Hernandez specify the identity of the person with whom he conspired. Indeed, it would be sufficient if Hernandez allocuted that he "agreed with other people to commit fraud against the United States with regard to food stamps." However, Hernandez had also reviewed the Indictment, which specifically informed him that the Government had charged Hernandez with conspiring with Paulino and "others known and unknown." See United States v. Parkins, 25 F.3d 114, 118 (2d Cir. 1994) (defendant had "lucid understanding" of charges against him and allocution was sufficient where defendant had previously reviewed Information and discussed it with attorney); (Plea Tr. at 4, 7). Counsel was reasonable in not objecting on this ground.

Hernandez also contends that his allocution lacked sufficient factual basis because he never admitted to the elements of the underlying food stamp fraud offenses. However, Hernandez pled guilty to the Government's charge that he conspired to defraud the United States, in violation of 18 U.S.C. § 371. He was not

charged with, nor did he plead guilty to, independent counts of the objects of the conspiracy: violations of 7 U.S.C. §§ 2024(b) and (c) and 18 U.S.C. § 641. During the plea, the Court adequately described and Hernandez properly allocuted to the elements of a § 371 conspiracy. (Plea Tr. at 8-9, 16-17.) Moreover, Hernandez's focus upon the $5,300 redemption certificate submission to Banco Popular as not evidencing a violation of the underlying food stamp offenses (see Pet. Br. at 21), is unavailing because the $5,300 submission was the overt act of the conspiracy that Hernandez acknowledged, not an element. Hernandez's argument that the conduct he allocuted to "do[es] not make him guilty of food stamp fraud" is of no moment, and Cohen was reasonable in not objecting to the plea's factual basis.

Hernandez appears to challenge the adequacy of the Court's description of the conspiracy offense, and Cohen's failure to object to it. As demonstrated above and in the plea transcript, the Court's instruction on the offense and the elements thereof was sufficiently detailed to provide Hernandez knowledge of the § 371 offense to which he pled guilty, and Hernandez's statements during the allocution showed that Hernandez was well aware of the

21

offense to which he pled guilty. But even if there was ambiguity as to the court's instruction, Hernandez's knowledge of the offense and its factual basis is also derived from the Indictments and the Plea Agreement, which Hernandez reviewed.

In assessing a plea's voluntariness, and whether counsel was ineffective in not objecting to the plea, a defendant's statements at allocution should not be analyzed in isolation. See Parkins, 25 F.3d at 118. In responding to a similar argument that a defendant was not properly informed of the nature of the offense charged, the Second Circuit has held that where a defendant has signed a plea agreement describing the charges, and acknowledged that he had read and discussed the charging document with his attorney, the defendant had an adequate understanding of the nature of the charges against him. See id.; Fama v. United States, 901 F.2d 1175, 1177-78 (2d Cir. 1990) (plea upheld where district court reviewed indictment with defendant and explained elements, notwithstanding purported deficiencies in allocution).

Similarly, in United States v. Urinyi, 271 Fed. Appx. 95, 97 (2d Cir. 2008), the court rejected a

22

defendant's attack on his plea's factual basis where he had

not allocuted to the amount of methamphetamine that was

detailed in the indictment.  The Court held that the

specific, uncomplicated nature of the indictment, coupled

with the defendant's admission of guilt provided a

sufficient basis for the guilty plea.  Id.[4]

Here, Hernandez reviewed the Indictments and the

Plea Agreement, which sufficiently detailed the offenses to

which Hernandez pled guilty.  The Court also sufficiently

explained the elements of the § 371 offense, Hernandez

acknowledged he understood, and then Hernandez provided a

sufficient factual basis for his offense.  (Plea Tr. at 8-

9, 16-17.)  Cohen was reasonable in withholding any

objection to the Court's description or Hernandez's

allocution.

Hernandez argues that the Court erroneously

failed to inform him, and Cohen erroneously failed to

---

[4]     Judge Cote's decision in Oliver v. United States, No. 07 Civ.
5921, 2008 WL 190487 (S.D.N.Y. Jan. 22, 2008), is also instructive.  In
Oliver, the § 2255 petitioner argued that his counsel was ineffective
for, among other reasons, failing to object to the court's allegedly
improper explanation of the charge.  Id. at *2.  Judge Cote found that
Magistrate Judge Maas complied with Rule 11 by providing the defendant
a general explanation of the charges, to which the defendant replied
that he understood the nature of the charges and had been able to
confer with counsel on the charges.  Id. at *5.  Accordingly, Judge
Cote rejected the challenge.

object, that "the statutes the government charged him to
conspire to violate, 7 U.S.C. § 2024(b)(1) and § 2024(c),
and 18 U.S.C. § 641 have elements (value of coupons and
value of stolen property) the government would need to
prove beyond a reasonable doubt to a jury in order to
convict." (Pet. Br. at 23.) Hernandez contends that
because these statutes have "threshold values that trigger
higher sentences," they are "elements of the offenses and
[Hernandez] has the right to have these facts submitted to
a jury and proven beyond a reasonable doubt" under
Apprendi.[5] (Id. at 25-26.) As discussed above, however,
Hernandez pled guilty to a § 371 conspiracy count, which
does not require the Government to prove the "threshold
values" for the food stamp offenses Hernandez and Paulino
conspired to violate. Hernandez's Apprendi argument is
unavailing.

Moreover, even if Hernandez is arguing (in his
brief and Affidavit) that the Court and Cohen erred in
failing to inform Hernandez that the "threshold values"
must be submitted to a jury before assessing financial loss
under the Guidelines, the Second Circuit has held that

---

[5]     In Apprendi, the Supreme Court held that, "Other than the fact of
a prior conviction, any fact that increases the penalty for a crime
beyond the prescribed statutory maximum must be submitted to a jury,
and proved beyond a reasonable doubt." 530 U.S. at 490.

24

courts may compute financial loss under the fraud Guideline
without requiring that loss be proven to a jury beyond a
reasonable doubt.  In United States v. Garcia, 240 F.3d 180
(2d Cir. 2001), the defendant was found guilty by jury of
three counts of food stamp fraud:  violations of 18 U.S.C.
§ 371, 7 U.S.C. § 2024(c), and 7 U.S.C. § 2024(b).  The
Court determined the loss caused by the defendant's fraud
pursuant to U.S.S.G. § 2F1.1.  Id. at 181.  The defendant
argued that Apprendi required that a jury must find a
sentencing fact – the loss caused by the food stamp fraud –
that affected the defendant's Guidelines range below a
statutory maximum.  Id. at 182.  The Garcia court
disagreed, finding that Apprendi does not affect a
"sentencing judge's traditional authority to determine
those facts relevant to selection of an appropriate
sentence within the statutory maximum."  Id. at 183.  Thus,
the Second Circuit held that "a guidelines factor,
unrelated to a sentence above a statutory maximum or to a
mandatory statutory minimum, may be determined by a
sentencing judge and need not be submitted to a jury."  Id.
at 184.

Apprendi was not violated by the Court's
determination of the financial loss caused by Hernandez's

food stamp fraud. In fact, Hernandez was sentenced to 60 months' imprisonment notwithstanding the higher Guidelines calculation for a financial loss of between \$1.5 million and \$2.5 million. Moreover, the statutory maximum under 7 U.S.C. § 2024(b) for benefits exceeding \$5,000 in value is 20 years' imprisonment, and the statutory maximum under 7 U.S.C. § 2024(c) for benefits of over \$100 in value is five years' imprisonment. Because of § 371's five year statutory maximum, Hernandez's 60-month sentence was not above the statutory maximum of either the § 371 count or the substantive food stamp fraud counts, for which he was not separately charged. Hernandez had no right to have the sentencing facts submitted to a jury, and thus neither the Court nor Cohen erred on this issue.

Hernandez also contends that he "was coached to sign a plea agreement that was not profitable to him and without a chance to appeal or collateral[ly] attack his sentence." (Pet. Br. at 28.) At the outset, Hernandez has waived this argument, which does not appear on its face to be an ineffective assistance of counsel argument. Even if Hernandez is arguing that Cohen was unreasonable in recommending the waiver provision and that Hernandez involuntarily signed the Plea Agreement because of Cohen's

advice, the contention is rejected. Hernandez, in fact, received a substantial benefit for pleading guilty: the Government's dismissal of a bank fraud charge carrying a 30-year maximum sentence that would have exposed Hernandez to a higher sentence than the five-year maximum in the Plea Agreement. In fact, as noted above, the Guidelines range on Count One of the Food Stamp Fraud Indictment was 78 to 97 months' imprisonment. Thus, Cohen's efforts secured Hernandez a sentence of potentially three years less than he otherwise could have received.

As Hernandez concedes, a waiver provision restricting a defendant's ability to appeal or collaterally attack his sentence is enforceable if the waiver is done voluntarily and intelligently. (See Pet. Br. at 28.) And as demonstrated above, Hernandez's agreement to the Plea Agreement was done voluntarily and intelligently and was clearly "profitable" for him.[6]

---

[6]     Hernandez has contended that because of the Plea Agreement, "the government was left without the burden to prove by preponderance of the evidence all the enhancements used to drive Petitioner's sentence to a statutory maximum". (Pet. Br. at 28.) However, pursuant to the Plea Agreement, for which Hernandez received a substantial benefit, Hernandez freely stipulated to the Guidelines calculation adopted by the Court. (See Plea Agreement at 2-3.) Similarly, Hernandez's contention at the end of his Affidavit that he had asked Cohen to seek a Fatico hearing does not render Cohen's assistance ineffective, because Hernandez had freely stipulated to the Guidelines computation, which was greater than his actual sentence. Notably, Cohen did argue at the sentencing hearing for a modified sentence on the bail-jumping

Lastly, Hernandez argues that both the Court and Cohen considered the Guidelines mandatory in violation of United States v. Booker, 543 U.S. 220 (2005). (See Pet. Br. at 30-31.) Again, Hernandez has expressly waived any right to attack collaterally the Court's computation of or justification for Hernandez's sentence if the sentence was within or below the stipulated Guidelines range of 72 to 78 months' imprisonment.[7] (See Plea Agreement at 6.) In addition, the Court did not consider the Guidelines mandatory.

In sentencing Hernandez, the Court referenced its sentencing opinion and stated that "all the terms and conditions of the sentence" set forth therein would be imposed, except as modified by Cohen's requests during the hearing. (See Sentencing Tr. at 7.) The Court noted in

charge to afford Hernandez good-time credit, to which the Court assented. (See Sentencing Tr. at 4-5.) Finally, Cohen's purported "failure" to force the Government to litigate a sentencing hearing — which could have affected whether the Government was willing to enter the Plea Agreement on its terms — "represented one strategic choice [by counsel] among others that was not unreasonable on the circumstances of the case," a fair assessment of which "cannot be made with the benefit of hindsight." Balbuena v. United States, 104 F. Supp.2d 218, 221 (S.D.N.Y. 2000).

[7]     Similarly, to the extent Hernandez also attacks the reasonableness of his sentence based on his criminal history or the sentence received by his co-conspirator (see Pet. Br. at 30-31), that argument has been waived. Moreover, as discussed above, Paulino's sentence does not render either Hernandez's sentence or Cohen's failure to object unreasonable. See Defex, 1998 WL 812572, at *3.

its 13-page sentencing opinion that in accordance with
Booker, the sentence imposed was reached through
considering the 18 U.S.C. § 3553(a) factors, "including the
advisory Sentencing Guidelines." (Sentencing Op. at 2
(emphasis added).)

Hernandez focuses in his petition — and did so on
appeal to the Second Circuit — on the Court's statement
that the sentence "was something which is required by the
law." (Sentencing Tr. at 8.) The sentencing opinion, as
referenced during the sentencing hearing, demonstrates that
the Court viewed the Guidelines as advisory and that a
sentence was "required by the law."

Furthermore, the Plea Agreement states that both
the stipulated Guidelines range and the overall "sentencing
Guidelines are not binding on the Court." (Plea Agreement
at 5.) Notably, Hernandez agreed in the Plea Agreement
that a total Guidelines sentence within the 72- to 78-month
range "would constitute a reasonable sentence in light of
all of the factors set forth in Title 18, United States
Code, Section 3553(a)." (Id.) Accordingly, Cohen did not
counsel Hernandez to sign the Plea Agreement "as if the

29

guidelines [were] still under the mandatory regimen."
(Pet. Br. at 30-31.)

Hernandez's ineffective assistance of counsel
contentions fail because Cohen provided "reasonably
effective assistance." Strickland, 466 U.S. at 687.
Indeed, under Strickland, a "court must indulge a strong
presumption that counsel's conduct falls within the wide
range of reasonable professional assistance," and that
presumption has not been rebutted. Id. at 689.

Hernandez's § 2255 challenge also fails under
Strickland's second prong. Under that prong, a petitioner
must show that "the deficient performance prejudiced the
defense . . . depriv[ing] the defendant of a fair trial."
Id. at 687. Specifically, a petitioner bears the burden of
demonstrating that there is a "reasonable probability that,
but for counsel's unprofessional errors, the result of the
proceeding would have been different." Id. at 694. A
"reasonable probability" is one that is "sufficient to
undermine confidence in the outcome." Id. In the guilty
plea context, a petitioner must show that "there is a
reasonable probability that, but for counsel's errors, he
would not have pleaded guilty and would have insisted on

going to trial." Hill, 474 U.S. at 59.  Hernandez argues

at pages 32-33 of his petition that had Cohen given

Hernandez "correct advise [sic] and information," Hernandez

"would not have plead [sic] guilty and waive[d] his right

to appeal and collateral[ly] attack his sentence but

instead he would have taken his case to a jury trial."

This is the only "prejudice" articulated by Hernandez in

his petition.

Because a convicted defendant will always have a

strong incentive to make a prejudice claim after

conviction, courts are skeptical of the defendant's own

"self-serving, post-conviction testimony" that but for

counsel's bad advice, the defendant would have pled guilty

or gone to trial.  See Purdy v. Zeldes, 337 F.3d 253, 259

(2d Cir. 2003) (in addressing prejudice showing required on

ineffective assistance claim, court noted that "a convicted

felon's self-serving testimony is not likely to be

credible"); Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir.

1991) (self-serving statement in memorandum that defendant

"would have to have been insane not to accept the plea

agreement for the minimum sentence" insufficient); Andrews

v. United States, No. 08 Civ. 3325, 2009 WL 860702, at *6

(S.D.N.Y. Mar. 31, 2009) (rejecting petitioner's self-

serving contention that he would have pled guilty before
trial if counsel had secured actual inculpatory audio
evidence beforehand); cf. United States v. Gordon, 156 F.3d
376, 381 (2d Cir. 1998) (habeas petitioner showed prejudice
under Strickland by providing "objective evidence" of a
disparity between Guidelines sentencing exposure and the
sentence exposure represented by counsel in addition to
petitioner's statement concerning his intentions).

          Here, Hernandez provides no actual or objective
evidence that would support his assertion that but for
Cohen's purported errors, he would have taken his case to
trial.   Indeed, there is no evidence that a significant
sentencing disparity would have occurred — or any other
actual effect — if he had been convicted after trial versus
pleading guilty.   In fact, if Hernandez had been convicted
after trial, his Guidelines range would have been higher
without a five-year statutory maximum or acceptance of
responsibility credit.   Thus, Hernandez's unreliable, self-
serving assertions of prejudice are of precisely the type
that courts adjudge insufficient under Strickland's second
prong.   See Purdy, 337 F.3d at 259; Toro, 940 F.2d at 1068;
Andrews, 2009 WL 860702, at *6.

## **An Evidentiary Hearing Is Not Required**

Rule (a) of the Rules Governing Section 2255
Proceedings provides that the district court shall
"determine whether an evidentiary hearing is required."  A
district court thus has discretion to determine if a
testimonial hearing is necessary to resolve a § 2255
petition, see Campusano v. United States, 442 F.3d 770, 776
(2d Cir. 2006), and may decline to hold an evidentiary
hearing where the petitioner has failed to raise colorable
or plausible claims in his petition.  See Contino v. United
States, 535 F.3d 124,128 (2d Cir. 2008) (where defendant
did not demonstrate a colorable claim of ineffective
assistance, no abuse of discretion in court's decision not
to hold an evidentiary hearing); Nelson v. United States,
No. 01 Civ. 3439 DC, 97 Cr. 817 DC, 2001 WL 799760, at *1
(S.D.N.Y. Jul. 16, 2001) (where petitioner was barred by
plea agreement from bringing habeas petition, and
ineffective assistance claims lacked merit, petition was
properly denied without a hearing).

Here, there is no reason to credit Hernandez's
self-serving statements in his petition, which are
contradicted by the record and applicable law.  As shown

33

above, and as seen from the plea and sentencing hearing transcripts, Hernandez pled guilty knowingly and voluntarily, and understood the nature and elements of the charges to which he pled.  Hernandez has not set forth a plausible legal claim that any of his unwaived, ineffective assistance of counsel arguments survive the Strickland test.  Accordingly, Hernandez's petition is denied without a hearing.

**Conclusion**

For the foregoing reasons, Hernandez's Petition under 28 U.S.C. § 2255 to Vacate Plea, Set Aside, or Correct His Sentence is denied in its entirety without an evidentiary hearing.

So ordered.

**New York, NY**
**April  / 9  , 2010**

ROBERT W. SWEET
U.S.D.J.

34